**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juwan Ledreece Dobbins,<br><br>               Plaintiff,<br><br>v.<br><br>Unknown Party, et al.,<br><br>               Defendants. | No. CV 21-00007-PHX-MTL (MTM)<br><br>**ORDER** |

Plaintiff Juwan Ledreece Dobbins, who is currently confined in the Maricopa County jail, brings this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant moves for summary judgment, and Plaintiff opposes the motion.[1] (Docs. 27, 33.)

**I.    BACKGROUND**

On screening Plaintiff's Complaint (Doc. 1) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a First Amendment free exercise claim against Defendant Montejano in Count Two and directed him to answer. (Doc. 5.) The Court dismissed the remaining claims and Defendants. (*Id.*)

In relevant part, Plaintiff alleges that a detention officer searched Plaintiff's possessions and discarded all his religious material, including his New King James Study Bible ("NKJV Study Bible"). (Doc. 1 at 4.) Plaintiff claims that "when confronted," the officer "ignored his request" and "continued searching." (*Id.*) Plaintiff notified Defendant

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 29.)

Montejano about the incident, but, initially, Montejano ignored Plaintiff's request. (*Id.*) Plaintiff persisted, and, after several attempts to retrieve his Bible, Montejano "looked in the trash to see that" the NKJV Study Bible was there. (*Id.*) Defendant Montejano informed Plaintiff that the Bible would not be returned because it had been altered—Plaintiff had covered the Bible in paper for preservation. (*Id.*) Even after explaining that, other than the protective cover, the book was unaltered, Montejano disregarded Plaintiff's prayers for intercession "and threw the [NKJV Study] Bible back in the trash." (*Id.*) Plaintiff claims he was prevented from continuing his daily Bible studies, as he is required to do, and, after several attempts, he was unable to obtain another study Bible. (*Id.* at 12.)

Defendant Montejano now moves for summary judgment and argues that he did not substantially burden Plaintiff's religious practice and that he is entitled to qualified immunity. (Doc. 27.)

**II.   LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial."). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence of . . . a genuine dispute." Fed. R. Civ. P. 56(c)(1). This Court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).

## III.   RELEVANT FACTS[2]

As part of the jail's intake procedures, Plaintiff's property was searched by Maricopa County Sheriff's Office ("MCSO") officers including Defendant Montejano. (Doc. 28 ¶ 3; Doc. 28-1 at 43 ¶ 5.) Plaintiff had an NJKV Study Bible; "Seeking God Through Prayer and Mediation," a "devotional study book[;] the 'Servant of God' study course booklet[;] [a] Contemporary New Testament Bible[;] 'Trade Your Cares for Calm' by Max Lucado[;] and 'God Will Carry You Through' by Max Lucado." (Doc. 28 ¶ 4.) During the search, either Defendant Montejano or nonparty Officer Ramirez confiscated and threw away these books. (*Id.* ¶ 5; Doc. 28-1 at 43 ¶¶ 6–7.) But, because of Plaintiff's request, Montejano reviewed the discarded material and returned all of the books he had thrown away except for the NJKV Study Bible because "he believed it was contraband pursuant to MCSO policy." (Doc. 28 ¶ 6.)

"The MCSO Inmate Rules and Regulations Handbook provides that '[a]ltered items are also considered contraband . . . [sic] Some examples of contraband include but are not limited to: [a]ny item which has been altered from its original form or used in a manner for

---

[2] Plaintiff objects to Defendant's use of Plaintiff's deposition because it was not signed by the court reporter or "the officer administering the deposition." (Doc. 34 ¶ 16.) Even an uncompleted, unsigned deposition is admissible under Rule 56 "[b]ecause there is no reason to believe that the sworn answers to questions are less reliable than an affidavit." *In re Sunset Bay Ass's*, 944 F.2d 1503, 1509–10 (9th Cir. 1991). Plaintiff's deposition meets the Rule 56 requirements; it is sworn testimony based on personal knowledge, and it sets forth facts admissible in evidence. Accordingly, Plaintiff's objection is overruled.

which it was not intended.'" (*Id.* ¶ 8.) "The handbook also provides that '[i]f you alter or tamper with religious materials, they will be taken away and you will be subject to disciplinary action.'" (*Id.*) MCSO policy also states that detention personnel must not "destroy, remove, or seize an inmate's authorized possessions without the" inmate's knowledge "unless security reasons dictate otherwise." (Doc. 34 ¶ 15.)

When inspecting the Plaintiff's property, Montejano claims that "he observed that Plaintiff's [NKJV] [S]tudy [B]ible was altered" in two ways: its cover was missing and was replaced with a brown paper bag and it was missing pages. (Doc. 28 ¶ 9.) During his deposition, Plaintiff testified that his NKJV Study Bible was not missing its cover and that there were no pages missing from the Bible. (Doc. 28-1 at 15 (Pl. Depo. at 42:8–14).) The only alteration was the brown paper bag he had added to protect the cover. (*Id.*) After throwing away Plaintiff's Bible, "[Defendant] Montejano instructed [him] that [he] could request a new [B]ible through religious services." (Doc. 28 ¶ 10.) Whether Plaintiff would receive a new Bible was not something that Montejano could control because "[h]e does not oversee or make decisions for MCSO Religious Services." (*Id.* ¶ 11.)

"Plaintiff has been a member of the Tonto Street Church of Christ since 1993," and "[t]he Church of Christ prefers to use the King James and the New King James translations of the Bible." (*Id.* ¶¶ 16–17.) Whether the Plaintiff finds the King James Version ("KJV") of the Bible an acceptable translation or alternative to the NKJV is unclear from the record. (*Compare* Doc. 28-1 at 23 *with Id.* at 61.) When Plaintiff's NJKV Study Bible was taken, he still had, and Montejano was aware that he still had, a Contemporary New Testament Bible. (*Id.* ¶¶ 12–13.)

"On August 10, 2020[,] Plaintiff submitted an Inmate Request Form" asking for an NKJV Study Bible, but "[t]he request was returned stating not available." (Doc. 34 ¶ 9.)

In prison, Plaintiff studies his Bible for about two hours a day: an hour of Old Testament study in the morning and an hour of New Testament study at night. (Doc. 28 at ¶ 14; Doc. 28-1 at 24–25.) Plaintiff also participated in Bible study groups with other

inmates where, if an inmate did not have a Bible, the other inmates in the study group would share their Bibles with that inmate. (Doc. 28-1 at 7 (Pl. Depo. at 23:11–18).)

About two months after his NKJV Study Bible was confiscated, "Plaintiff could access MCSO tablets and was able to" read an electronic version of the KJV Bible on the tablets. (Doc. 28 ¶ 21.) "Inmates generally have access to the MCSO tablets each day . . . starting at approximately 7:00 AM until the evening." (*Id.* ¶ 20.) Since February, Plaintiff has been able to borrow a NKJV Bible from an inmate for daily personal study. (*See id.* ¶ 22.)

## IV.   DISCUSSION

### A.   Free Exercise Claim

"Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Nevertheless, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 348 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).

To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

If the inmate makes that initial showing, he must show that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *Shakur*, 514 F.3d at 884–85. "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba*

*City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)); *see also Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) ("A substantial burden must be 'more than an inconvenience'"; it prevents an inmate from "engaging in [religious] conduct or having a religious experience.") (citations omitted).

A regulation that substantially burdens a prisoner's right to freely exercise his religion will be upheld only if "it is reasonably related to a legitimate penological interests." *Shakur*, 514 F.3d at 884; *id.* at 884–85.

> [F]our factors [must] be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:
>
> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3) Whether accommodation of the asserted constitutional right will impact . . . guards and other inmates, and on the allocation of prison resources generally; and
>
> (4) Whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.

*Shakur*, 514 F.3d at 884 (quoting *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)) (internal quotation marks omitted). *Turner* addressed the reasonableness of prison regulations; however, "the same analysis has been applied to individual acts" by prison officials who allegedly prevented "a prisoner from engaging in religious practice." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1224 (S.D. Cal. 2012) (citing *Ford v. McGinnis*, 352 F.3d 582, 594–95 (2d Cir. 2003)).

The sincerity of Plaintiff's religious beliefs are not disputed. (*See* Docs. 27, 35.) Montejano does not argue that Plaintiff's claims fail because the burden imposed was reasonably related to a legitimate penological interest. (*Id.*) Because Montejano waived both of these arguments, the Court only determines whether Plaintiff's religious practice was substantially burdened.

The Plaintiff asserts that his First Amendment right to study and teach from the Bible daily was violated because Montejano seized and disposed of his NJKV Study Bible. (*See* Doc. 1 at 4, 12; Doc. 33 at 3–4.) Montejano argues that Plaintiff was not substantially burdened because "Plaintiff had access to the Contemporary New Testament Bible" and was "able to engage in bible study by (1) using the King James translation of the Bible on MCSO tablet and (2) borrowing a New King James bible from another inmate." (Doc. 27 at 5.) Moreover, Montejano asserts, Plaintiff was able to borrow a NKJV Bible for his daily study. (*Id.* at 5–6.)

Montejano relies on *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998) to support the notion that denying Plaintiff access to the Old Testament for two months was not a substantial burden on his First Amendment rights. (Doc. 27 at 5.) In *Canell*, the Ninth Circuit held that a prison guard disrupting a Muslim prisoner's prayers for up to eighteen days over a span of six weeks was not a substantial burden on the prisoner's First Amendment rights because the intrusions were "relatively short-term and sporadic." *Canell*, 143 F.3d at 1215; *see id.* at 1211–12. The Court is unconvinced. Plaintiff in this case was not only denied the ability to perform a religious act—studying, teaching, and reading—but also denied access to his sacred texts, namely, the entire Old Testament. Furthermore, the assaults on Plaintiff's religious beliefs were not short term and sporadic. In fact, they were continuous over a period of about two months.

On this record, Defendant Montejano's confiscation of Plaintiff's New King James Bible did substantially burden Plaintiff's right to study and read his Bible. Plaintiff's NKJV Study Bible was confiscated leaving him with only the Contemporary New Testament Bible. As its name suggests, the Contemporary New Testament Bible only contains the

New Testament; it does not contain any of the 39 Old Testament books.[3] Thus, Plaintiff was completely cut off from the entire Old Testament—39 of the 66 books of the Bible—for about two months.[4] As part of his religious readings, the Old Testament was the subject of daily morning study that lasted sixty to ninety minutes. That Plaintiff still had access to other religious materials is irrelevant; he was completely deprived of nearly 60% of the content of his holy scripture. This is clearly a substantial burden "preventing [Plaintiff] from engaging in [religious] conduct or having a religious experience" and "exert[ing] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Worldwide Church of God*, 227 F.3d at 1121; *Ohno*, 723 F.3d at 1011. Thus, the Court will not grant summary judgment on this issue.

Plaintiff's arguments regarding his inability to study the Old Testament are sufficient to defeat Montejano's motion for summary judgment. But, the Court also finds Plaintiff's other arguments about translational preferences persuasive given the significant differences in translational methodology and philological and linguistic scholarship between the Contemporary English Version ("CEV"), NJKV, and KJV translations of the Bible.[5]

### B.   Qualified Immunity

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). While "[q]ualified immunity shields federal and state officials from money damages[,]" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011), it is "an immunity from suit rather than a mere defense to liability[,]" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Consequently, it "is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231.

A district court evaluating whether a government official is entitled to qualified immunity at the summary judgment stage asks two questions: (1) whether, taking the facts

---

[3] *See* The Holy Bible (New King James Version).
[4] *Id.*
[5] *See* Leland Ryken, Choosing a Bible: Understanding Bible Translation Differences (2005)

in the light most favorable to the nonmoving party, the officers' conduct violated a federal statutory or constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). Either question may be addressed first, and if the answer to either is "no," then the officers cannot be held liable for damages. *See Pearson*, 555 U.S. at 236. With respect to the second prong, "[b]ecause the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). For this reason, the Supreme Court has emphasized the importance of ensuring the evidence is reviewed through the appropriate lens when deciding the "clearly established prong" on summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 657–58 (2014).

The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff*, 572 U.S. at 779 (2014)). Thus, the second step in the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting *Saucier*, 533 U.S. at 202). "This requires a high degree of specificity." *Id.* (internal quotation omitted). But, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Montejano argues that qualified immunity applies because there is "no controlling Ninth Circuit or Supreme Court case holding that a jail must provide an inmate a specific translation of the Bible or that a plaintiff is substantially burdened by studying a different translation of the Bible for a short or sporadic period of time." (Doc. 27 at 7.) Moreover, he argues that Plaintiff has failed to raise a genuine dispute of fact on this issue. (Doc. 35 at 5.) The Court disagrees.

Contrary to Montejano's arguments, it is clear to the Court that qualified immunity does not apply in this case. The first prong of the qualified immunity question is clear. Montejano's actions prevented Plaintiff from reading the Old Testament for over two months. As a practicing Christian, Plaintiff engaged in daily morning studies of the Old Testament. Thus, Montejano violated Plaintiff's First Amendment right to free exercise of religion.

Regarding the second prong, the right to read the Old Testament was clearly established at the time Montejano acted. *See, e.g.*, *Jones v. Williams*, 791 F.3d 1023, 1033 (9th Cir. 2015) ("It [is] well established . . . that government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs."). It would be clear to any reasonable officer faced with Montejano's decision that depriving Plaintiff of access to the Old Testament for two months was unlawful. Therefore, the Court will not grant summary judgment on qualified immunity.

**V.    CONCLUSION**

Accordingly,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 27).

(2) Defendant's Motion for Summary Judgment (Doc. 27) is **denied**.

Dated this 13th day of April, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

- 11 -